# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

| | |
|---|---|
| RHONDA McCLINTON, on behalf of the UNITED STATES OF AMERICA | PLAINTIFF-RELATOR |
| V. | CAUSE NO. 3:16-CV-128-CWR-FKB |
| SOUTHERNCARE, INC., d/b/a SOUTHERNCARE HOSPICE SERVICES and JOHN DOES #1-10 | DEFENDANTS |

## ORDER

This is a *qui tam* action filed by the plaintiff-relator, Rhonda McClinton, under the False Claims Act (FCA), 31 U.S.C. §§ 3729–3733. McClinton alleges that defendant Southerncare Inc., which owns and operates hospice care centers: (1) falsely submitted claims for patients who were not qualified for Medicare hospice services; (2) falsely billed Medicare for services that were not rendered to hospice patients; and (3) wrongfully terminated McClinton's employment in response to her confronting her superiors regarding their practices.

Southerncare has filed the present motion to dismiss, arguing that the Complaint does not describe fraud with the requisite particularity and that, more generally, the Complaint does not allege facts upon which relief may be granted. Docket No. 32. Considering the parties' briefing, the applicable law, and the pleadings, the Court grants in part and denies in part Southerncare's motion.

**I.  Background**

Southerncare operates hospice care centers throughout the United States. Much of its operating costs are subsidized through Medicare payments made on behalf of eligible beneficiaries. Relator Rhonda McClinton is a registered nurse who began working for Southerncare in 2012. She brought this *qui tam* action against Southerncare in February 2016, on

behalf of the United States, alleging violations under the FCA. Docket No. 1. Specifically, McClinton alleges that Southerncare submitted to Medicare claims for payment for services provided to patients who were ineligible for hospice care. *Id.* at 1.

McClinton claims that she "was assigned responsibility for patients receiving hospice services during that time period." *Id.* She further alleges that she "was privy to intimate details regarding the assignment of patients to hospice services, and the condition of those patients;" "performed weekly assessments on the patients under her care, received direct communications from her supervisors regarding those patients regarding their status as hospice care recipients;" and was "present at multiple staff meetings and conferences at which patients and Southerncare policies regarding their status were discussed." *Id.* at 2.

McClinton describes several of Southerncare's business practices that she contends demonstrate intent to defraud the Government. *Id.* at 3-4. She alleges that Southerncare employees falsified patients' records to make them eligible for hospice care. *Id.* at 4. Many of these patients had family connections with supervisors in the Jackson office. *Id.* at 4-5. She contends that she "was aware of at least six patients, namely B.B., R.S., D.G., N.S., S.M. and B.D., who were on the census of patients receiving hospice services even though their diagnosis and/or condition did not qualify them for hospice care pursuant to Medicare rules." *Id.* at 4-5. McClinton also contends that "at weekly staff meetings, Relators and other skilled nurses charged with documenting patients were encouraged to document a decline in condition, especially on those patients who were due for recertification" in order to increase billing. *Id.* at 5.

McClinton says Southerncare knowingly failed to visit patients as required by Medicare rules and regulations yet billed as though its employees visited patients. She asserts that Sheila Jenkins, R.N., and other Southerncare nurses failed to visit patients as required and knowingly

certified visits as though they had been completed. *Id.* "Examples include multiple visits to J.W. during which Nurse Jenkins would visit for no more than ten minutes, would not fully inspect the patient and would provide no wound care, but would document an extensive visit and would bill Medicare accordingly." *Id.*

McClinton also alleges that Southerncare "expected" her and other nurses to actively solicit patients and their physicians to seek hospice services "in part by encouraging physicians to alter their diagnosis to fit the Medicare criteria and in part by misrepresenting the nature of hospice services to patients and their families." *Id.* After confronting her superiors about this pattern of conduct, McClinton alleges that she "was terminated from her position on the pretext of prior patient complaints and an alleged drop in patient consensus." *Id.* at 7.

This action followed. After the United States declined to intervene, the Court in August 2020 ordered that the Complaint be unsealed and served upon Southerncare. Southerncare has now moved to dismiss the Complaint.

## II. Discussion

### A. Applicable Law

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires dismissal if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court accepts the plaintiff's factual allegations as true and makes reasonable inferences in the plaintiff's favor. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A satisfactory complaint will "contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted). The plaintiff's claims must also be plausible on their face, which means there is "factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).

For fraud claims, including claims under the FCA, Rule 9(b) also requires the complaint to "state with particularity the circumstances constituting the fraud." *United States ex rel. Williams v. Bell Helicopter Textron Inc.*, 417 F.3d 450, 453 (5th Cir. 2005); Fed. R. Civ. P. 9(b). "Put simply, Rule 9(b) requires 'the who, what, when, where, and how' to be laid out." *Benchmark Electronics, Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003); *see also Carroll v. Fort James Corp.*, 470 F.3d 1171, 1174 (5th Cir. 2006). In the Fifth Circuit, the Rule 9(b) standard requires "specificity as to the statements (or omissions) considered to be fraudulent, the speaker, when and why the statements were made, and an explanation of why they were fraudulent." *Plotkin v. IP Axess, Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

**B. Analysis**

Southerncare moves the Court to dismiss plaintiff-relator's FCA claims, reverse FCA claim, and FCA retaliation claim. The Court will consider each in turn.

**1. Presentment Claim under 31 U.S.C. § 3729(a)(1)(A)**

The FCA creates liability for any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the federal government. 31 U.S.C. § 3729(a)(1)(A). "[T]he provision's *sine qua non* is the presentment of a false claim." *United States ex rel. Grubbs v. Kanneganti,* 565 F.3d 180, 188 (5th Cir. 2009). Stated differently, the FCA "attaches liability, not to the underlying fraudulent activity . . . but to the claim for payment." *United States ex rel. Longhi v. United States*, 575 F.3d 458, 467 (5th Cir. 2009) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 785 (4th Cir. 1999)).

To state a presentment claim under the FCA, a relator must allege: (1) a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that was presented to the Government. *United Sates ex rel. Patton v. Shaw Servs., L.L.C.*, 418 F. App'x 366, 369 (5th Cir. 2011).

The Court observes that McClinton alleges in her Complaint a pattern of conduct wherein Southerncare knowingly presented false claims for payment to the United States by overbilling for hospice care. McClinton claims that from February 2012 to the present, Southerncare knowingly and purposely admitted patients who did not qualify for hospice services under Medicare and billed Medicare for these services by "encouraging physicians to alter their diagnosis to fit the Medicare criteria and in part by misrepresenting the nature of hospice services to patients and their families." Docket No. 1 at 5.

Moreover, the Complaint states that Southerncare knowingly failed to visit patients as required by Medicare rules and regulations and billed as though they visited the patient. Specifically, relator alleges that Sheila Jenkins, R.N., failed to visit patients. "Examples include multiple visits to J.W. during which Nurse Jenkins would visit for no more than ten minutes, would not fully inspect the patient and would provide no wound care, but would document an extensive visit and would bill Medicare accordingly." *Id.* If the foregoing allegations are accepted as true, McClinton has sufficiently alleged a violation of § 3729(a)(1)(A) of the FCA.

The Court further finds that these allegations sufficiently put the defendant on notice regarding their alleged misconduct. *Cf. Grubbs*, 565 F.3d at 190 (recognizing that the purpose of Rule 9(b) is to "provide defendants with fair notice of the plaintiffs' claims, protect[] defendants from harm to their reputation and goodwill, reduce[] the number of strike suits, and prevent[]

plaintiffs from filing baseless claims then attempting to discover unknown wrongs."). Therefore, the Court denies Southerncare's motion to dismiss as to this claim.

2. **False Record Claim under 31 U.S.C. § 3729(a)(1)(B)**

Section 3729(a)(1)(B) of the FCA prohibits "knowingly maki[ing], us[ing], or caus[ing] to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B). A claim under § 3729(a)(1)(B) requires a relator to "show that the claim presented for payment . . . was false." *United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*, 794 F.3d 457, 476-77 (5th Cir. 2015). The documenting of a false record—when it is made with the requisite intent—is enough to satisfy the FCA, so long as the false record is material to the payment. *See United States ex rel. Patel v. Cath. Health Initiatives,* 792 F. App'x 296, 300 (5th Cir. 2019).

To plead a violation under a false record theory, like a presentment claim, a relator must allege: (1) a false statement or fraudulent course of conduct; (2) made or carried out with the requisite scienter; (3) that was material; and (4) that was presented to the government. *Patton v. Shaw Servs., L.L.C.*, 418 F. App'x. at 369 (5th Cir. 2011).

Here, as presently constructed, McClinton's Complaint does not offer sufficient details of a false record claim to satisfy Rule 9(b). She contends that Southerncare submitted false documents to Medicare in support of its claims for reimbursement. Specifically, she alleges that "at weekly staff meetings, Relators and other skilled nurses charged with documenting patients were encouraged to document a decline in condition, especially on those patients who were due for recertification." Docket No. 1 at 5. However, these allegations do not meet several of the Rule 9(b) requirements: "what" statements were in the documents; "what" statements in the documents were

6

false or misleading; and "how" they were used to secure government funds. Thus, the Court finds that this claim fails under Rule 9(b).

3. **Reverse-False-Claim under 31 U.S.C. § 3729(a)(1)(G)**

Next up is McClinton's allegation brought under 31 U.S.C. § 3729(a)(1)(G). Section 3729(a)(1)(G) reverses the typical claim under the FCA; instead of creating liability for wrongfully *obtaining* money from the government via false claims, the reverse-false-claims provision creates liability for wrongfully *avoiding* payments that should have been made to the government. *See United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d 325, 329 (5th Cir. 2003). A claim under § 3729(a)(1)(G) requires (1) that the defendant had an obligation to pay money to the government, (2) that the defendant used a false statement to avoid or decrease that obligation, (3) that the false statement was material, and (4) that the defendant made the false statement knowingly. *See United States ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co.*, 668 F. Supp. 2d 780, 811 (E.D. La. 2009).

After reviewing the Complaint, the Court finds that this claim should be dismissed because, without any additional facts, a reverse FCA claim here would be redundant. "In cases where a plaintiff alleges a reverse false claim by claiming that the defendant fraudulently overcharged the government and then failed to repay the government, courts have consistently dismissed the claim as redundant of false statement and presentment claims." *United States v. Kinetic Concepts, Inc.*, CV 08-1885, 2017 WL 2713730, at *13 (C.D. Cal. Mar. 6, 2017); *see also United States ex rel. Ligai v. ETS-Lindgren, Inc.*, No. H-112973, 2014 WL 4649885 (S.D. Tex. Sept. 16, 2014) ("This type of redundant false claim is not actionable under subsection [a(1)(G)]." ) (citation omitted); *accord United States ex rel. Integra Med Analytics, LLC v. Creative Sols. in Healthcare, Inc.*, No. SA-17-CV-1249-XR, 2019 WL 5970283, at *13 (W.D. Tex. Nov. 13, 2019). Without any

additional facts concerning this claim, the Court finds McClinton's reverse FCA claim to be redundant of her primary FCA claims. Accordingly, the Court grants Southerncare's motion on this claim.

### 4. FCA Retaliation Claim

Next, the parties dispute whether McClinton has adequately stated a retaliation claim under the FCA.

The FCA's antiretaliation provision protects an employee who is "discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment" for acts "in furtherance of" an FCA claim or "other efforts to stop" fraud against the government. 31 U.S.C. § 3730(h).

To establish a retaliation claim, the plaintiff must show: "(1) that [she] was engaged in protected activity with respect to the False Claims Act; (2) that [her] employer knew [she] was engaged in protected activity; and (3) that [she] was discharged because [she] was engaged in protected activity." *Thomas v. ITT Educ. Servs., Inc.*, 517 F. App'x 259, 262 (5th Cir. 2013) (per curiam) (citations omitted and alterations added).

While the Fifth Circuit has not expressly stated which pleading standard applies to FCA retaliation claims, most courts—including fellow district courts in this circuit—have held that Rule 8 governs. *See, e.g.*, *Paige v. AM Hospice, Inc.*, No. 3:19-CV-319-PRM, 2020 WL 2543301, at *2 (W.D. Tex. May 15, 2020); *see also Thomas v. ITT Educ. Servs., Inc.*, No. CIV.A. 11-544, 2011 WL 3490081, at *3 (E.D. La. Aug. 10, 2011) ( "All federal circuit courts of appeal that have faced this issue have reached the conclusion that 31 U.S.C. § 3730(h) claims need only 'meet the Rule 8(a) . . . standard.'") (collecting cases). This outcome makes sense because "[a] retaliation claim under 31 U.S.C. § 3730(h) does not require a showing of fraud and therefore need not meet the

heightened pleading requirements of Rule 9(b)." *ITT Educ. Servs., Inc.*, 2011 WL 3490081 at *3 (citation omitted). The Court finds these authorities persuasive and concludes that McClinton must only satisfy Rule 8's requirement of a short and plain statement to proceed on this kind of claim.

### i. Protected Activity

"A protected activity is one motivated by a concern regarding fraud against the government." *United States ex rel. Johnson v. Raytheon Co.*, 395 F. Supp. 3d 791, 798 (N.D. Tex. 2019) (quoting *Thomas*, 517 F. App'x at 262). Thus, the critical inquiry is whether "the [internal] complaints [to an employer] raise concerns about fraud" committed against the government. *Id.* "Expressing concerns about possible fraud to their employers, for example to a supervisor, is a step in furtherance of uncovering fraud, and thus protected under the FCA." *Paige v. AM Hospice, Inc.*, No. 3:19-CV-319-PRM, 2020 WL 2543301, at *3 (W.D. Tex. May 15, 2020), *report and recommendation adopted*, No. EP-19-CV-319-PRM, 2020 WL 7974006 (W.D. Tex. June 23, 2020) (cleaned up).

In this case, McClinton's Complaint alleges that in February 2013, she was terminated after reporting that a patient recently assigned to her had suffered neglect by not receiving services that had been billed to Medicare. Specifically, McClinton maintains that she "confronted her superior regarding the substandard and overbilled care rendered to J.W." Docket No. 1 at 6. Taking these alleged facts as true, the undersigned finds that McClinton's internal reporting of false claims through expressing concern about the possibility of Medicare fraud to her supervisor constitutes a protected activity.

### ii. Employer Knowledge

Next, a relator must show that the defendant knew she was engaged in a protected activity. *ITT Educ. Servs., Inc.*, 517 F. App'x at 262. "It is insufficient for the relator to show that the

employer knew that the whistleblower had concerns about compliance with the law; she must show that the employer was on notice of the distinct possibility of *qui tam* litigation." *United States ex rel. Gonzales v. Fresnius Med. Care N. Am.*, 748 F. Supp. 2d 95, 104 (W.D. Tex. 2010) (citation omitted). "Courts have found this notice prong satisfied based on allegations that the employee complained directly to her supervisors." *United States ex rel. George v. Bos. Sci. Corp.*, 864 F. Supp. 2d 597, 608 (S.D. Tex. 2012).

Here, McClinton alleges that she directly confronted her superiors about the defendant's services rendered to patient J.W. and its other "numerous illegal practices," which were outlined throughout the Complaint. Docket No. 1 at 6-7. Further, McClinton alleges "[she]was terminated from her position on the pretext of prior patient complaints and an alleged drop in patient consensus." *Id.* at 7.

Again, accepting these allegations as true, one could reasonably infer that defendant terminated McClinton, not for its stated reason, but in retaliation for her FCA protected activities. Accordingly, the Court finds that McClinton has sufficiently plead an FCA retaliation claim. Thus, the Court finds that the defendant's motion on this claim should be denied.

## III. Conclusion

For the reasons stated above, the Court grants in part and denies in part defendant's motion to dismiss. Within 10 days the parties shall contact the chambers of the magistrate judge for the entry of a scheduling order.

**SO ORDERED**, this the 23rd day of June, 2021.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE