IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

RHONDA McCLINTON, *on behalf of the*                                    PLAINTIFF
*United States of America*

V.                                                      CAUSE NO. 3:16-CV-128-CWR-FKB

SOUTHERNCARE, INC., d/b/a                                          DEFENDANTS
SOUTHERNCARE HOSPICE
SERVICES; JOHN DOES #1-10

## ORDER

Before the Court is SouthernCare's motion to dismiss. Docket No. 64. SouthernCare argues that the relator's presentment claim runs afoul of the first to file and public disclosure bars, fails to describe fraud with the requisite particularity, and that, more generally, the Amended Complaint does not allege facts upon which relief may be granted. Considering the parties' briefing, the applicable law, and the pleadings, the Court grants SouthernCare's motion.

I.      **Factual and Procedural History**

This is a *qui tam* action filed by the plaintiff-relator, Rhonda McClinton, under the False Claims Act (FCA), 31 U.S.C. §§ 3729–3733. The following allegations are drawn from the Complaint and Amended Complaint. *See* Docket Nos. 1 and 62.

SouthernCare operates hospice care centers throughout the United States. Much of its operating costs are subsidized through Medicare payments made on behalf of eligible beneficiaries. Relator Rhonda McClinton is a registered nurse who began working for SouthernCare in May 2012. She brought this *qui tam* action against SouthernCare in February 2016, on behalf of the United States, alleging violations of the FCA. Docket No. 1; *see also* Docket No. 62. Specifically, relator alleges that SouthernCare submitted to Medicare claims for services

provided to patients who were ineligible for hospice care, and for services billed but not rendered. Docket No. 62 at 1.

Relator states that she "was assigned responsibility for patients receiving hospice services." *Id.* She further alleges that she "was privy to intimate details regarding the assignment of patients to hospice services, and the condition of those patients;" "performed weekly assessments on the patients under her care and received direct communications from her supervisors regarding those patients regarding their status as hospice care recipients;" and was "present at multiple staff meetings and conferences at which patients and SouthernCare policies regarding their status were discussed." *Id.* at 1-2.

Relator describes SouthernCare's business practices as an intentional scheme to defraud the Government. *Id.* at 4-6. That is, she alleges that SouthernCare employees falsified patients' records to make them eligible for hospice care. *Id.* at 5. She names 10 patients who "were on the census of patients receiving hospice services even though their diagnosis and/or condition did not qualify them for hospice care pursuant to Medicare rules." *Id.* She also claims that "at weekly staff meetings, she and other skilled nurses charged with documenting patients were encouraged to document a decline in condition, especially on those patients who were due for recertification," in order to increase billing. *Id.* at 6.

She also states that SouthernCare knowingly failed to visit patients as required by Medicare rules and regulations, yet billed as though its employees indeed visited. *Id.* at 6-7. When staff did visit, she claims, they "would visit for no more than ten minutes, would not fully inspect the patient and would provide no wound care, but would document an extensive visit and would bill Medicare accordingly." *Id.*

Relator further alleges that SouthernCare "expected" her and other nurses to actively solicit patients and their physicians to seek hospice services "in part by encouraging physicians to alter their diagnosis to fit the Medicare criteria and in part by misrepresenting the nature of hospice services to patients and their families." *Id.* at 5. After confronting her superiors about this pattern of conduct, McClinton alleges that she "was terminated from her position on the pretext of prior patient complaints." *Id.* at 9.

Relator filed this action on February 29, 2016. After filing several motions for additional time to determine whether to intervene, the United States declined to intervene, which in August 2020, prompted the Court to order that the Complaint be unsealed and served upon SouthernCare.

SouthernCare first moved to dismiss the Complaint on October 5, 2020. In its motion, SouthernCare argued that the Complaint did not describe fraud with the requisite particularity and did not allege facts upon which relief may be granted. Docket No. 32. After briefing concluded, this Court granted in part and denied in part SouthernCare's Motion to Dismiss. Docket No. 51. The Court held that the Presentment Claim under 31 U.S.C. § 3729(a)(1)(A) and FCA Retaliation Claim could proceed, but dismissed relator's False Record Claim under 31 U.S.C. § 3729(a)(1)(B) and Reverse-False-Claim under 31 U.S.C. § 3729(a)(1)(G).

On September 2, 2021, relator amended her Complaint. Docket No. 62. According to the parties, they disagreed on the scope of discovery, so relator added two new exhibits to the Amended Complaint and "clarified that the allegations included systemic fraud; not simply the ten specific instances alleged." Docket No. 68 at 3. For example, she added a line stating that she "witnessed systemic and pervasive fraud that extends far beyond the ten incidences of which Relator has personal knowledge." Docket No. 62 at 9. Otherwise, relator admits that the allegations in the Complaint and Amended Complaint are "virtually identical." Docket No. 68 at 3.

3

On September 23, 2021, SouthernCare filed the present motion to dismiss relator's presentment claim. It has not sought to dismiss McClinton's retaliation count.

## II.    Legal Standard

When a Rule 12(b)(1) motion is filed in conjunction with a Rule 12(b)(6) motion, the Court must first consider the jurisdictional challenge under Rule 12(b)(1). *See Wolcott v. Sebelius*, 635 F.3d 757, 762 (5th Cir. 2011). The Court may find that subject matter jurisdiction is lacking based on "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Id.* The party asserting jurisdiction bears the burden of proof. *Id.*

## III.    Discussion

The FCA creates liability for any person who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval" to the federal government. 31 U.S.C. § 3729(a)(1)(A). "[T]he provision's sine qua non is the presentment of a false claim." *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 188 (5th Cir. 2009). Stated differently, the FCA "attaches liability, not to the underlying fraudulent activity . . . but to the claim for payment." *United States ex rel. Longhi v. United States*, 575 F.3d 458, 467 (5th Cir. 2009) (quoting *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 785 (4th Cir. 1999)).

The FCA allows private individuals, *qui tam* relators, to sue those suspected of defrauding the government on the government's behalf. 31 U.S.C. §§ 3729-30. If successful, relators receive a monetary award. *Id.* § 3730(d)(1).

Congress, cognizant that with the monetary reward comes the risk of abusive, "parasitic" suits, created several restrictions on *qui tam* actions. *United States v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 570 F. App'x 386, 389 (5th Cir. 2014) ("The FCA's qui tam provisions seek to

encourage suits from whistleblowers with 'genuinely valuable information,' while also discouraging 'opportunistic plaintiffs from filing parasitic lawsuits.'"). One such provision relevant here is the first to file bar.

### A.     First to File Bar

In the Fifth Circuit the first to file bar is jurisdictional. *See United States ex rel. Edgett v. Kimberly-Clark Corp.*, No. 3:15-CV-0434-B, 2017 U.S. Dist. LEXIS 154975, at *8 (N.D. Tex. Sept. 22, 2017) (citing *Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 378 (5th Cir. 2009)). Recent Supreme Court guidance, however, has called this designation into question.

First, in its campaign to ward off the "profligate use of the term 'jurisdiction,'" the Supreme Court announced a bright-line rule instructing courts to "inquire whether Congress has 'clearly stated' that [a] rule is jurisdictional; absent such a clear statement, . . . 'courts should treat the restriction as nonjurisdictional in character.'" *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013). Second, in a *qui tam* case called *Carter*, the Supreme Court addressed a statute of limitations argument before addressing the first to file bar, suggesting that the bar is not jurisdictional. *Kellogg Brown & Root Serv., Inc. v. U.S. ex rel. Carter*, 575 U.S. 650 at 656, 662 (2015).

Prior to *Carter*, all circuits to have considered the issue treated the first to file bar as jurisdictional. *See* Scott Glass, Note, *Is the False Claims Act's First-To-File Rule Jurisdictional?*, 118 Colum. L. Rev. 2361 (2018). After *Carter* and the "clear statement rule," the D.C. and Second Circuits held that the bar is not jurisdictional. *See United States ex rel. Hayes v. Allstate Ins. Co.*, 853 F.3d 80, 85 (2d Cir. 2017) (finding that it will "join the D.C. Circuit in holding that the first-to-file rule is not jurisdictional and instead bears on the merits of whether a plaintiff has stated a claim."). The First Circuit, too, joined the chorus. *See United States v. Millenium Labs., Inc*., 923

5

F.3d 240, 251 (1st Cir. 2019) (stating that "Given *Carter*, *Heath*, *Hayes*, and the Supreme Court's clear statement rule, there is a compelling reason to believe that prior panels would no longer view the first-to-file rule as jurisdictional. For the same reasons, we now hold that the first-to-file rule is not jurisdictional."). The Fifth Circuit has not confronted the issue after *Carter*. Absent Fifth Circuit precedent mandating otherwise, district courts within this Circuit have continued to treat the bar as jurisdictional. *See United States ex rel. Capshaw v. White,* No. 3:12-CV-4457-N, 2017 U.S. Dist. LEXIS 200634 at *7 (N.D. Tex. July 10, 2017) (collecting cases). This Court will do so as well.

Once someone files an FCA suit, the first to file bar prohibits another plaintiff from bringing "a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). In *Carter*, the Supreme Court rejected the argument that Congress intended the rule to "forever bar[] any subsequent related action," and instead defined "pending" to mean a suit that "remains undecided" and that the first to file bar no longer applies "once [the pending action] is dismissed." 575 U.S. at 662. In deciding as much, the court admitted that "[t]he FCA's qui tam provisions present many interpretive challenges, and it is beyond our ability in this case to make them operate together smoothly like a finely tuned machine." *Id.* at 664. Accordingly, if the first to file bar applies, courts must dismiss *without prejudice,* allowing the plaintiff to bring the related action later, as long as the earlier suit is no longer pending. *See id.*

Here, the "pending action" is *U.S. ex rel. Hamrock v. SouthernCare, Inc.*, 2:13-CV-102-JP (E.D. Pa. Jan. 8, 2013) ("*Hamrock*"). The timeline is not in question. *Hamrock* was filed on January 8, 2013 and upon settlement, dismissed on December 20, 2018. Hence, when the present action was filed on February 19, 2016, *Hamrock* was indeed pending. Thus, under § 3730(b)(5),

whether the present action and *Hamrock* are "related," is determinative as to this Court's jurisdiction.

Here, however, the Court must confront another circuit split. Because the first to file bar does not "forever bar[] any subsequent related action," had SouthernCare challenged jurisdiction in its first motion to dismiss, and had the Court found that the actions were related, the undersigned would have dismissed the claim without prejudice. *See Carter*, 575 U.S. at 664. Relator could have again pursued the claim once *Hamrock* was dismissed. *Id.* Yet this argument was not raised until now, and the timing presents a new wrinkle: relator filed an Amended Complaint on September 2, 2021, and by then *Hamrock* had long been dismissed—*i.e.*, *Hamrock* was no longer pending. The question now, and herein lies the second circuit split, is how § 3730(b)(5) applies where, as here, the earlier-filed action is dismissed.

SouthernCare, citing *United States v. Albertsons LLC*, argues that filing an amended complaint cannot cure the jurisdictional defect that existed when the action was first brought. No. SA-15-CV-957-XR, 2018 U.S. Dist. LEXIS 211538, at *7-15 (W.D. Tex. Dec. 17, 2018). As discussed in *Albertsons*, the Fifth Circuit has not decided this question, and other circuits are split. *Id.* at *9. "The First Circuit, the first to confront the question after *Carter*, held that an amended complaint can cure this defect, emphasizing function over form in so holding." *Id.* Specifically, the First Circuit reasoned,

> Developments occurring after the filing of the second amended complaint . . . have dissolved the jurisdictional bar that the court below found dispositive. . . . [T]his case is analogous to the cases in which a jurisdictional prerequisite (such as an exhaustion requirement) is satisfied only after suit is commenced. Under the circumstances, it would be a pointless formality to let the dismissal of the second amended complaint stand—and doing so would needlessly expose the relator to the vagaries of filing a new action.

*United States ex rel. Gadbois v. PharMerica Corp.*, 809 F.3d 1, 6 (2015).

"The Second and D.C. Circuits have since taken the opposite approach." *Albertsons,* 2018 U.S. Dist. LEXIS 211538 at *9. The D.C. Circuit stated that to accept the First Circuit's reasoning would result in a rule that conflicts with the statute and "give rise to anomalous outcomes." *United States ex rel. Shea v. Cellco Partnership*, 863 F.3d 923, 930 (D.C. Cir. 2017). For example, "if a relator brings suit while a related action is pending, her ability to proceed with her action upon the first-filed suit's completion could depend on the pure happenstance of whether the district court reached her case while the first-filed suit remained pending." *Id.*

Agreeing with the D.C. Circuit, the Second Circuit held that "the statute bars a person from bringing—not continuing to prosecute—a related action during the pendency of an FCA case" and the "first-to-file bar is thus clear: an action cannot be brought while a first-filed action is pending." *United States ex rel. Wood v. Allergan, Inc.*, 899 F.3d 163, 172 (2d Cir. 2018). "Therefore, amending or supplementing a complaint does not bring a new action, it only brings a new complaint into an action that is already pending." *Id.* And accordingly, an "amended or supplemental pleading cannot change the fact that [relator] brought an action while another related action was pending, as is prohibited by the first-to-file bar." *Id.* (citing *Shea*, 863 F.3d at 923); *accord Cho v. Surgery Partners, Inc.*, No. 20-14109, 2022 U.S. App. LEXIS 8774 at *10 (11th Cir. April 1, 2022).

The Fifth Circuit considered a similar issue in *United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322 (2011). In *Jamison*, the court, applying an earlier version of the public disclosure bar, held that the Supreme Court "did not speak to the question whether a relator can use an amended complaint to establish jurisdiction when the original complaint is lacking. Consequently, we fall back on the longstanding rule that the amendment process cannot be used to create jurisdiction retroactively where it did not previously exist." *Id.* (citing *Aetna Cas. & Sur.*

*Co. v. Hillman*, 796 F.2d 770, 775 (5th Cir. 1986) (analyzing *Rockwell International Corp. v. United States*, 549 U.S. 457, 473-74 (2007)).

In accord with *Jamison*, this Court finds the Second and D.C. Circuits' approach persuasive. To allow relator's amended complaint to cure the jurisdictional defect would be akin to allowing her to "secure herself pole position in the first-to-file queue." *Shea*, 863 F.3d at 930. It undermines the purpose of the first to file bar—to ensure a "race to the courthouse among eligible relators, which may spur the prompt reporting of fraud." *Branch Consultants,* 560 F.3d at 377. Therefore, this Court holds that relator's action was filed while *Hamrock* was pending and can only proceed if the two are not "related."

To determine whether two *qui tam* actions are related, the Court must inquire as to whether "the later-filed complaint alleges the same material or essential elements of fraud described in a pending qui tam action." *Id.* at 378. A relator cannot avoid the bar by "simply adding factual details or geographic locations to the essential or material elements of a fraud claim against the same defendant described in a prior complaint." *Id.* "Focus[ing] on the details of the later-filed action would allow an infinite number of copycat qui tam actions to proceed so long as the relator in each case alleged one additional instance of the previously exposed fraud," which conflicts with the bar's "goal of preventing parasitic" actions. *Id.*

According to relator's original Complaint,[1] while employed as a registered nurse for SouthernCare in Clinton, Mississippi, from 2012 to 2013, she witnessed that SouthernCare,

- "[C]ontinues to admit patients and take actions to keep them on services who do not meet the criteria for hospice care." Docket No. 1 at ¶ 13;

---

[1] Though relator admits that her original Complaint and Amended Complaint are "virtually identical," this Court examines her original Complaint. *See Jamison*, 649 F.3d at 328 (holding that when a plaintiff's original "complaint did not establish jurisdiction, it should have been dismissed; his amendments cannot save it."); *see also United States ex rel. Solomon v. Lockheed Martin Corp.*, 878 F.3d 139, 143-44 (5th Cir. 2017) (holding that the parties failed to raise any arguments on appeal concerning the district court's decision to rely only on the original complaint, and thus relying only on the original complaint in evaluating the FCA jurisdictional bar on appeal).

- Engages in "[i]mproper recruiting" by expecting staff "to actively solicit patients and their physicians to seek hospice services" and "encouraging physicians to alter their diagnosis" and "misrepresenting the nature of hospice services to patients and their families." *Id.* at ¶ 14;
- "[K]nowingly fail[s] to visit patients as required by Medicare rules and regulations and bill[s] as though they visited the patient." *Id.* at ¶ 15; and
- "[K]nowingly falsify data on visits that were made in order to increase billing for skilled nurse visits and other services that were not provided." *Id.*

The underlying facts and claims in the present case are identical to those in *Hamrock*.

Indeed, Hamrock alleged that SouthernCare,

- "routinely" certifies and recertifies patients as eligible for Medicare and Medicaid hospice benefits though the patients are not eligible. Docket No. 64-5, Hamrock Complaint, at ¶ 4;
- "submit[s] claims for upcoded levels of care to obtain higher reimbursement[.]" *Id.*;
- "provid[es] kickbacks to healthcare professionals with the intent to induce referrals[.]" *Id.*; and
- and has an aggressive marketing team that markets directly to patients and encourages staff to falsify documentation. *Id.* at ¶¶ 36-45.

In summary, both actions allege that SouthernCare falsifies documentation to certify and recertify ineligible patients, submits falsified requests for reimbursements, aggressively markets to patients, and provides kickbacks to healthcare professionals and staff. Both actions fall under 31 U.S.C. § 3729(a)(1), though *Hamrock* involves additional FCA provisions. Relator even references *Hamrock* in her amended complaint, and her argument essentially boils down to the claim that the conduct in *Hamrock* extends beyond Pennsylvania. But merely expanding the geographical scope is not enough. *See Branch Consultants*, 560 F. 3d at 378. Accordingly, the actions are related, and this Court does not have jurisdiction.

## IV.    Conclusion

Having found that this Court lacks jurisdiction over relator's presentment claim per the first to file bar, the Court declines to consider the remainder of SouthernCare's arguments. The Court, however, retains jurisdiction over relator's FCA retaliation claim, which may proceed.

*See*, *e.g.*, *United States ex rel. Doe v. Lincare Holdings, Inc.*, No. 5:15-CV-19-DCB-MTP, 2017

U.S. Dist. LEXIS 27173 (S.D. Miss. Feb. 27, 2017) (dismissing FCA presentment claim for lack

of jurisdiction pursuant to the first to file bar yet retaining FCA retaliation count); *accord United*

*States ex rel. Bartz v. Ortho-McNeil Pharm., Inc.*, 856 F. Supp. 2d 253 (D. Mass. 2012).

      **SO ORDERED**, this the 26th day of April, 2022.

                s/ Carlton W. Reeves
                UNITED STATES DISTRICT JUDGE